RICK D. FELLER, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 4325–07.        Filed November 8, 2010.

P overstated his prepayment credits on his Federal income
tax returns in order to claim refunds for 1992 through 1997.
On Nov. 22, 2006, R issued two notices of deficiency deter-
mining that P was subject to the fraud penalty of I.R.C. sec.
6663 because his overstated prepayment credits resulted in
underpayments of income tax pursuant to I.R.C. sec. 6664 and
sec. 1.6664–2(c)(1) and (g), *Example* (*3*), Income Tax Regs. On
Nov. 27, 2006, R assessed, by use of the mathematical error
assessment procedures of I.R.C. sec. 6213(b)(1), adjustments
related to P's overstatement of prepayment credits for 1992
through 1997. P argues that (1) I.R.C. sec. 6501 bars the
issuance of the notices of deficiency and (2) sec. 1.6664–2(c)(1)
and (g), *Example* (*3*), Income Tax Regs., under which over-
stated prepayment credits result in underpayments of income
tax, is invalid because it violates the intent of Congress in
enacting I.R.C. sec. 6664 and that he is not subject to the
fraud penalty. We apply the test set forth in *Chevron U.S.A.
Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to
determine the validity of the regulation. Under *Chevron* step
1, we find that I.R.C. sec. 6664 is ambiguous regarding the
definition of "underpayment". Under *Chevron* step 2, we find
that the regulation is based on a permissible construction of
I.R.C. sec. 6664. *Held*: P filed false returns with the intent to
evade tax within the meaning of I.R.C. sec. 6501(c); therefore
the issuance of the deficiency notices was not time barred.
*Held*, *further*, sec. 1.6664–2(c)(1) and (g), *Example* (*3*), Income
Tax Regs., is valid. *Held*, *further*, P is subject to the fraud
penalty pursuant to I.R.C. sec. 6663 for each year at issue.

*Terry W. Vincent*, for petitioner.
*Cathy J. Horner* and *Dennis G. Driscoll*, for respondent.

HAINES, *Judge*: Rick D. Feller petitioned the Court for
redetermination of the following penalties:

| Year | Penalty sec. 6663 |
|------|-------------------|
| 1992 ............................................................... | $78,481 |
| 1993 ............................................................... | 56,689 |
| 1994 ............................................................... | 43,566 |
| 1995 ............................................................... | 58,660 |
| 1996 ............................................................... | 59,963 |
| 1997 ............................................................... | 58,552 |

Hereafter, the years 1992, 1993, 1994, 1995, 1996, and 1997 will be referred to as the years at issue. After concessions, the issues for decision are: (1) Whether the issuance of the notice of deficiency for each of the years at issue is barred by the expiration of the limitations period for assessment under section 6501; and (2) whether petitioner's overstated prepayment credits for the years at issue resulted in underpayments of income tax attributable to fraud pursuant to sections 6663 and 6664.[1] In so deciding, we must determine the validity of section 1.6664–2(c)(1) and (g), *Example* (*3*), Income Tax Regs.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time petitioner filed his petition, he resided in Ohio.

*Petitioner's Business*

Petitioner earned a bachelor of science degree in accounting from the University of Akron in 1976 and received a certified public accountant certificate from the State of Ohio in 1980. In 1984 petitioner became a partner in the small accounting firm of Skonk, Feller, Tuber & Brown.[2]

In 1992 petitioner and two additional partners of the firm became 100-percent owners of stock in SFT Health Care Corp. (SFT). SFT owned two nursing homes, Red Carpet Health Care Center and Southeastern Health Care Center. Petitioner

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

[2] The firm went through several name changes. It was originally called Tuber & Shonberg, Inc., then Skonk, Feller & Tuber, and finally Skonk, Feller, Tuber & Brown.

served as president of the nursing homes throughout the years at issue. In his capacity as president, petitioner visited the nursing homes once or twice a week and oversaw their operations. He also was responsible for the financial reporting and preparation of tax returns associated with the nursing homes and SFT.

### Red Carpet Health Care Center Forms W–2

For the years at issue petitioner attached to his Federal income tax returns Forms W–2, Wage and Tax Statement, reporting actual wages from Red Carpet Health Care Center of $17,781, $17,602, $19,202, $33,571, $19,016, and $23,580 with Federal withholdings of $366, $300, $464, $1,025, $350, and zero, respectively. Petitioner also attached to his Federal income tax returns for the years at issue fictitious Forms W–2 purportedly issued by Red Carpet Health Care Center and reporting fictitious wages of $120,000, $100,000, $75,000, $75,000, $75,000, and $72,500 and fictitious Federal withholdings of $65,000, $52,000, $39,000, $40,500, $40,750, and $41,750, respectively.

### Southeastern/Barnesville Health Care Center Forms W–2

For 1992 petitioner attached to his Federal income tax return a Form W–2 issued by Southeastern Health Care Center reporting actual wages of $23,739 and Federal withholding of $1,334. Petitioner also attached to his Federal income tax return a second, fictitious Form W–2 purportedly issued by Southeastern Health Care Center reporting fictitious wages of $120,000 and fictitious withholding of $70,000.

For 1993, 1994, 1995, 1996, and 1997 petitioner attached to his Federal income tax returns Forms W–2 issued by Barnesville Health Care Center[3] reporting actual wages of $25,536, $28,161, $47,960, $80,119, and $80,119 with Federal withholdings reported of $1,253, $650, $990, $2,210, and $2,210, respectively. Petitioner also attached to his Federal income tax return fictitious Forms W–2 purportedly issued by Barnesville Health Care Center reporting fictitious wages of $100,000, $75,000, $80,000, $80,000, and $75,000 with

---

[3] Southeastern Health Care Center changed its name to Barnesville Health Care Center in 1993.

fictitious Federal withholdings reported of $52,000, $39,000, $43,500, $44,500, and $42,500, respectively.

*Other Falsifications*

For each of the years at issue petitioner included with his Federal income tax return a Schedule E, Supplemental Income and Loss, on which he reported a false amount of partnership losses generated by his accounting firm. Petitioner also included a Schedule A, Itemized Deductions, in which he reported an inflated itemized deduction for State and local income taxes paid that was based on the fictitious Forms W–2 he prepared.

*Refund Claims*

For 1992, 1993, 1994, 1995, 1996, and 1997 petitioner claimed refunds of $86,181, $57,349, $34,686, $48,776, $48,703, and $44,383, respectively.

*Criminal Case*

After a civil audit and a criminal investigation, criminal proceedings were initiated against petitioner in the U.S. District Court for the Northern District of Ohio. On January 23, 2003, petitioner pleaded guilty to willfully making and submitting a false tax return for 1997 in violation of section 7206(1). In his plea agreement, petitioner admitted that he filed deliberately falsified personal tax returns for each of the years at issue. He also admitted that for each of the years at issue he claimed a false income tax refund when he knew he actually owed income taxes and that he attached to his return a fictitious Form W–2 for each nursing home.

On November 22, 2006, respondent mailed petitioner two notices of deficiency, one for 1992–95 and the other for 1996–97. The Form 4549–B, Income Tax Examination Changes, attached to each notice, among other things reduced income by the amount of fictitious wages, increased income for fictitious losses claimed from the partnership, and reduced itemized deductions by the amount of State taxes claimed on the fictitious Forms W–2. For each year the corrected tax liability was less than the tax shown on the return petitioner filed if claimed prepayment tax credits were ignored.

However, section 1.6664–2(c)(1) and (g), *Example* (*3*), Income Tax Regs., requires excess withholding tax credits to be included in determining an underpayment under section 6663. Accordingly, the notices of deficiency determined fraud penalties under section 6663 based upon underpayments of income tax pursuant to section 6664 of $104,642, $75,584, $58,087, $78,214, $80,993, and $78,073 for 1992, 1993, 1994, 1995, 1996, and 1997, respectively. On November 27, 2006, respondent assessed adjustments related to petitioner's overstatement of withholding tax credits for each of the years at issue through the mathematical error assessment procedures of section 6213(b)(1) and section 301.6201–1(a)(3), Proced. & Admin. Regs.

On February 22, 2007, petitioner sought redeterminations, asserting that (1) pursuant to section 6501, the statute of limitations applied to bar assessment for each of the years at issue, and (2) section 1.6664–2(c)(1) and (g), *Example* (*3*), Income Tax Regs., including petitioner's overstated withholding tax credits in the calculation of his underpayments is invalid.

OPINION

## I. *Period of Limitations on Assessment*

Petitioner argues that the issuance of the notices of deficiency was barred by section 6501(a). Section 6501(a) provides the general rule that the amount of any tax imposed must be assessed within 3 years after the return is filed. An exception to the 3-year rule is provided in section 6501(c)(1):

> (1) FALSE RETURN.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

Respondent argues that the period of limitations in section 6501(a) does not apply because petitioner filed false returns with the intent to evade taxes for the years at issue. See sec. 6501(c)(1).

The burden of proof is upon respondent to prove that petitioner has filed a false return with the intent to evade tax for each year at issue. See sec. 7454(a); Rule 142(b). Because direct evidence of an intent to evade tax is rarely available, intent may be proved by circumstantial evidence and reason-

able inferences from the facts. *Petzoldt v. Commissioner*, 92 T.C. 661, 699 (1989).

Petitioner pleaded guilty to willfully making and submitting a false tax return for 1997 in violation of section 7206(1) and admitted, in his plea agreement, that to obtain refunds he falsified personal tax returns for each of the years at issue by attaching to his returns fictitious Forms W–2 which overstated income tax withheld. Throughout the 6 years at issue, petitioner was licensed as a certified public accountant practicing in an accounting firm that prepared income tax returns for clients. He held himself out to the public as sophisticated and knowledgeable in the preparation of tax returns. He prepared his own returns and those needed for businesses in which he had invested.

Critically, petitioner falsified his own returns and Forms W–2 for the businesses in the same manner for 6 consecutive years and stopped only when confronted by the authorities. On each of his returns, among other things, he overstated and falsified (1) partnership losses, (2) itemized deductions for State taxes withheld, and (3) Federal withholding credits. Through his conduct he obtained $320,078 in Federal refunds to which he was not entitled over the 6-year period. Petitioner testified that he intended to pay back the refunds he received as soon as he overcame troubles in his personal life, but there is no evidence that petitioner at any time made an effort to repay even after his conduct was discovered. Petitioner's explanation for his behavior is implausible.

We find that respondent has shown by clear and convincing evidence that petitioner filed his returns for the years at issue with the intent to evade tax. See *Brister v. United States*, 35 Fed. Cl. 214 (1996) (involving an accountant and bookkeeper who overstated withholding credits to obtain refunds). Therefore, the 3-year period of limitations under section 6501(a) does not apply for any of the years at issue, and respondent was not barred from issuing the notices of deficiency for those years.

## II. *Sections 6663 and 6664; Section 1.6664–2(c), Income Tax Regs.*

Respondent has established that petitioner intended to evade tax and thus engaged in fraudulent conduct. However,

before there can be an imposition of a fraud penalty, respondent must also prove that the fraud resulted in underpayments of tax required to be shown on the returns. Section 6663(a) sets out the fraud penalty:

SEC. 6663(a). IMPOSITION OF PENALTY.—If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

The term "underpayment" is defined in section 6664(a) as follows:

SEC. 6664(a). UNDERPAYMENT.—For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—
    (1) the sum of—
      (A) the amount shown as the tax by the taxpayer on his return, plus
      (B) amounts not so shown previously assessed (or collected without assessment), over
    (2) the amount of rebates made.

For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.

Neither paragraph (1)(B) nor (2) applies in this case.

Section 1.6664–2(c)(1), Income Tax Regs., interprets the definition of "underpayment" in section 6664 by stating that the tax shown on the return is reduced by the excess of:

(i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) * * * over
(ii) The amounts actually withheld, * * * with respect to a taxable year before the return is filed for such taxable year.

The regulation extends the meaning of "underpayment" to include a taxpayer's overstated credits for withholding. Sec. 1.6664–2(g), *Example* (*3*), Income Tax Regs. Accordingly, if a taxpayer overstates prepayment credits, such as the credit for wages withheld, the overstatement decreases the amount of tax shown on the return and increases the underpayment of tax. *Sadler v. Commissioner*, 113 T.C. 99, 103 (1999).

Petitioner contends that section 1.6664–2(c)(1) and (g), *Example* (*3*), Income Tax Regs., is invalid because the statute which it interprets, section 6664, does not refer to credits for tax withheld, and it was not Congress' intent to include with-

holding credits in the calculation of an underpayment. Petitioner notes that repealed section 6653, which previously had imposed the fraud penalty, defined an underpayment with reference to a deficiency as defined in section 6211. Section 6211(b)(1) excludes credits for taxes withheld from the calculation of a deficiency, and consequently such credits did not affect the calculation of an underpayment under repealed section 6653(c). Therefore, petitioner bases his argument in legislative history that the definition of an underpayment in section 6664(a) as in effect for the years at issue was "not intended to be substantively different from * * * [previous] law." H. Rept. 101–247, at 1394 (1989).

Respondent argues that Congress enacted a new penalty regime and significantly reworded the definition of "underpayment" for income tax purposes, thereby justifying the Secretary's clarification of the treatment of overstated prepayment credits.

As a threshold matter, both parties agree that the regulation was issued under section 7805(a) and is applicable to the computation of the underpayments in the instant case. Accordingly, our next step is to determine whether the regulation warrants judicial deference.

## III. *Judicial Deference*

Much ink has been spilled on the question of the level of judicial deference to be afforded to regulations. See, e.g., Berg, "Judicial Deference to Tax Regulations: A Reconsideration in Light of *National Cable*, *Swallows Holding*, and Other Developments", 61 Tax Law. 481 (2008). The Court of Appeals for the Sixth Circuit, to which any appeal of this case would lie absent a written stipulation to the contrary, has held that regulations issued under the general authority of the Secretary to promulgate necessary rules, with notice and comment procedures, are entitled to judicial deference as outlined by the U.S. Supreme Court in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). See sec. 7482(b)(2); *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971); *Estate of Timken v. United States*, 601 F.3d 431, 434–435 (6th Cir. 2010); *Estate of Gerson v. Commissioner*, 507 F.3d 435 (6th Cir. 2007), affg. 127 T.C. 139 (2006).

In *Chevron*, the Supreme Court addressed the circumstances in which the judiciary is to afford an agency discretion to interpret the statutes the agency administers. In what is commonly referred to as the two-step "*Chevron* analysis", the Supreme Court stated:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. [*Id.* at 842–843; fn. refs. omitted.]

*Chevron* step 1 requires us to determine whether the statute clearly expresses the intent of Congress. If the statute is "silent or ambiguous with respect to the specific issue" before the Court, *Chevron* step 2 requires us to determine whether the regulation "is based on a permissible construction of the statute."

"[T]he cardinal rule [is] that a statute is to be read as a whole * * * since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). Sections 6663 and 6664 impose a fraud penalty when taxpayers, with intent to evade, underpay the income tax shown on their returns. We will examine the language and history of those sections to determine what the term "underpayment" means in the context of a fraud statute. The examination requires us to analyze the definitions of a "deficiency" and of an "underpayment" and their interrelationship, if any, in interpreting sections 6663 and 6664. We must consider whether an underpayment can exist without a deficiency.

The definition of a deficiency in section 6211(a) as it relates to income tax has remained essentially unchanged since the 1954 codification of the internal revenue laws. [4] The

---

[4] SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title * * * the term "deficiency" means the amount by

Continued

basic formula is to determine the correct tax and reduce it by the tax reported by the taxpayer. The resulting amount is the deficiency. In calculating the deficiency, estimated tax payments and withholding credits are ignored. Sec. 6211(b)(1).

The definition of an underpayment for purposes of the civil fraud penalty remained unchanged from the 1954 codification of the Internal Revenue Code until 1989. In 1989 Congress repealed sections of the Code,[5] including section 6653, that imposed accuracy-related penalties and replaced them with sections 6662 through 6665. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101–239, sec. 7721(a), 103 Stat. 2395. Congress' primary focus in enacting a new penalty regime was to alleviate taxpayer confusion and the difficulties of administration of several different penalties relating to the accuracy of a tax return. H. Rept. 101–247, *supra* at 1388. The House report also stated that the definition of "underpayment" in section 6664(a) was not "intended to be substantively different from * * * [previous] law." *Id.* at 1394.

Repealed section 6653(b)(1) provided that if any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return was due to fraud, certain penalties applied.[6] Section 6653(c) tied the definition of an underpayment to the definition of a deficiency.

SEC. 6653(c). DEFINITION OF UNDERPAYMENT.—For purposes of this section, the term "underpayment" means—

(1) INCOME, ESTATE, GIFT, AND CERTAIN EXCISE TAXES.—In the case of a tax to which section 6211 (relating to income, estate, gift, and certain

---

which the tax imposed by Subtitle A or B * * * exceeds the excess of—

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amount previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b)(2), made.

(b) RULES FOR APPLICATION OF SUBSECTION (a).—For purposes of this section—

(1) The tax imposed by subtitle A and the tax shown on the return shall both be determined without regard to payment on account of estimated tax, without regard to the credit under section 31 * * *

[5] Secs. 6653, 6659, 6659A, 6660, and 6661. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101–239, sec. 7721(c), 103 Stat. 2399. Sec. 6662 was stricken and replaced by a new sec. 6662. *Id.* sec. 7721(a), 103 Stat. 2395.

[6] The amount of penalty was increased in stages over the years from 50 percent of the underpayment to 75 percent of the underpayment and 50 percent of the interest payable under sec. 6601.

excise taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing) * * *

The basic formula (correct tax − reported tax = underpayment) applied and, because of the application of section 6211(b)(1), estimated payments and withholding credits did not enter into the calculation.

Sections 6663 and 6664 replaced repealed section 6653. For convenience, we again set out the pertinent portions of sections 6663 and 6664. Section 6663(a) deals with imposition of the fraud penalty:

SEC. 6663(a). IMPOSITION OF PENALTY.—If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

The term "underpayment" is defined in section 6664(a) as follows:

SEC. 6664(a). UNDERPAYMENT.—
For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—
    (1) the sum of—
        (A) the amount shown as the tax by the taxpayer on his return,
    * * *

The basic formula (correct tax − reported tax = underpayment) is retained and, to that extent, the definition of an underpayment is not substantively different from previous law. In a case involving a deficiency and fraud in which no excess withholding credits are claimed, the calculation of an underpayment is unchanged. In that context, the terms "deficiency" and "underpayment" can be used interchangeably.

However, in a fraud case where there is no deficiency but excess withholding credits have been claimed, as is the case here, or in a fraud case where there is a deficiency and such credits have been claimed, the effect of the statutory changes, in relation to the amount of any underpayment, is unclear from sections 6663 and 6664(a) on their face. The definition of an underpayment is no longer tied to the definition of a deficiency under section 6211, as it had been in section 6653(c), and the restrictions in section 6211(b)(1),

excluding estimated tax and withholding credits from the calculation of a deficiency, no longer apply to an underpayment by explicit cross-reference. Consequently, the statutes do not speak expressly to the precise issue whether withholding credits can be taken into account when calculating an underpayment for purposes of sections 6663 and 6664(a).

Therefore, we find under *Chevron* step 1 that for the determination of an underpayment, Congress seems to have retained the basic formula (correct tax − reported tax = underpayment) in section 6664 but has deleted the express cross-reference to the definition of a deficiency in section 6211. Section 6664 is silent and ambiguous with respect to the issue before us; i.e., Congress has not directly addressed the meaning of the term "underpayment" when a taxpayer has overstated withholding credits.

The Secretary has promulgated section 1.6664–2(c)(1) and (g), *Example* (*3*), Income Tax Regs., to address the issue. Under *Chevron* step 2 we must determine whether the regulation is based upon a permissible construction of the statute. We "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading * * * [we] would have reached if the question had arisen in a judicial proceeding." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843 n.11. Rather, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844. The Court should not disturb the agency's action unless it appears from the statute or its legislative history that it is one that Congress would not have sanctioned. *Id.* at 845.

On March 4, 1991, the Federal Register published a notice of proposed rulemaking regarding the accuracy-related penalty under section 6662, the fraud penalty under section 6663, and the definitions and rules for purposes of both penalties under section 6664. See Notice of Proposed Rulemaking, 56 Fed. Reg. 8943 (Mar. 4, 1991). The preamble to the proposed regulations explained that: (1) Overstated prepayment credits increase the amount of an underpayment but have no effect on the calculation of a deficiency; (2) whether a position with respect to an item has substantial authority or is disclosed on a return is relevant to the determination of the amount of a deficiency, but not to the

determination of the amount of an underpayment; and (3) the amount of an underpayment is reduced by amounts not shown on the return that have been previously assessed (or collected without assessment), but the amount of a deficiency is not. *Id.* at 8947. Commentators on the proposed regulation objected to factoring in overstated prepayment credits in the calculation of the underpayment. The basis of their objection was that the overstated prepayment credits are not taken into account in computing the amount of a deficiency under section 6211. A public hearing was held on June 3, 1991.

The proposed regulations were adopted and published as final regulations on December 31, 1991. T.D. 8381, 1992–1 C.B. 374. The preamble to the accuracy-related penalty final regulations rejected the position of the commentators and stated: "There are differences in the section 6664 definition of 'underpayment' and the section 6211 definition of 'deficiency' that warrant taking overstated prepayment credits into account for purposes of the accuracy-related penalty." *Id.*, 1992–1 C.B. at 379.

For convenience, we will again set out the pertinent portion of the regulations. Section 1.6664–2(c)(1), Income Tax Regs., interprets the definition of "underpayment" in section 6664 by stating that the tax shown on the return is reduced by the excess of:

(i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) * * * over

(ii) The amounts actually withheld, * * * with respect to a taxable year before the return is filed for such taxable year.

Petitioner contends that the regulation is inconsistent with congressional intent.[7] He stresses the House report which stated that the definition of "underpayment" in section 6664(a) was not "intended to be substantively different from * * * [previous] law." H. Rept. 101–247, *supra* at 1394. On the basis of that statement, petitioner argues that the definition of an underpayment, as contemplated by section 6664,

---

[7] Petitioner cites several cases in support of the proposition that the term "underpayment" is equivalent to the term "deficiency" under current law. See *Estate of Capehart v. Commissioner*, 125 T.C. 211, 224 (2005); *Downing v. Commissioner*, T.C. Memo. 2005–73, supplementing T.C. Memo. 2003–347; *Estate of Johnson v. Commissioner*, T.C. Memo. 2001–182, affd. 129 Fed. Appx. 597 (11th Cir. 2005). Each of these cases dealt with a situation in which the taxpayer's underpayment under sec. 6664 also constituted the deficiency under sec. 6211. None dealt with the overstatement of prepayment credits.

should not be different from what it was under section 6653(c) and thus withholding credits should be excluded from the computation of an underpayment.

We disagree with petitioner's position. Neither section 6664(a) nor the regulation differs substantively from prior law. The basic formula (correct tax − reported tax = underpayment) is retained, and in cases involving a deficiency in which no excess withholding credits are claimed, the calculation of an underpayment, for purposes of section 6664 and its regulations, is no different from what it would have been under former section 6653(c)(1).

If Congress had intended the old and the new penalty regimes to be identical in every respect, we may infer that it would have equated the term "underpayment" with "deficiency" and carried forward section 6653(c)(1) verbatim into section 6664(a). [8] Congress did not do so. Congress has amended section 6664 on three occasions but has not altered the definition of the term "underpayment" in response to the regulation. See Pension Protection Act of 2006, Pub. L. 109–280, sec. 1219, 120 Stat. 1083; Gulf Opportunity Zone Act of 2005, Pub. L. 109–135, sec. 403, 119 Stat. 2615; American Jobs Creation Act of 2004, Pub. L. 108–357, sec. 812, 118 Stat. 1577.

The Secretary has followed Congress' intent to carve out a specialized set of rules for the penalties applicable to the accuracy of a return. The application of the regulation is by its terms specifically limited to underpayments for purposes of section 6662 (relating to the accuracy-related penalty) and section 6663 (relating to the fraud penalty) for purposes of income taxes imposed under subtitle A. Sec. 1.6664–2(a), Income Tax Regs. By fleshing out the mechanics of what factors into the section 6664 underpayment calculation when a deficiency is not present, it promotes fairness in the administration of the penalties. It also facilitates the standardization of the reasonable cause/good faith exception criteria for the application of all accuracy-related penalties.

Our examination of whether the regulation is based on a permissible construction of section 6664 reveals that the Sec-

---

[8] One salient change was the omission from the new statute of the parenthetical clause found in sec. 6653(c), under which the tax shown on a late return did not count. This created a gap that the Secretary has filled by regulations taking account of the tax shown on a "qualified amended return." Sec. 1.6664–2(c)(2) and (3), Income Tax Regs.

retary reasonably construed the statute through the regulation. Accordingly, we hold the regulation to be valid. See *Estate of Gerson v. Commissioner*, 507 F.3d at 441.

If the Commissioner proves that any portion of an underpayment is due to fraud, the entire underpayment will be treated as attributable to fraud for purposes of the penalty under section 6663(b), except any portion of the underpayment that the taxpayer establishes by a preponderance of the evidence is not attributable to fraud. *Knauss v. Commissioner*, T.C. Memo. 2005–6. Respondent has proved that petitioner committed fraud in filing his returns for the years at issue. Petitioner has not shown that any portion of the underpayment in any year at issue is not attributable to fraud. Therefore, the underpayments for the years at issue are subject in their entirety to fraud penalties. Sec. 6663(b).

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent*.

Reviewed by the Court.

COLVIN, COHEN, WELLS, GALE, THORNTON, GOEKE, KROUPA, HOLMES, PARIS, and MORRISON, *JJ*., agree with this majority opinion.

———————————

THORNTON, *J*., concurring: I agree with the majority opinion and write separately to respond to some of the dissenters' concerns.

Judge Gustafson contends that section 1.6664–2(c)(1), Income Tax Regs., contradicts the plain meaning of section 6664(a)(1)(A) by defining "the amount shown as the tax by the taxpayer on his return" so as to remove excess withholding credits. I respectfully disagree. As explained in more detail below, the Code authorizes the IRS to process an assessment to recover or disallow excess withholding credits as an adjustment to the tax shown on the return on which the credit was claimed. Consistent with those provisions, the regulation permissibly treats the amount shown on the return as reflecting such an adjustment.

The IRS summarily assessed petitioner's erroneous refunds pursuant to section 6201(a)(3), which authorizes assessment of excess ("overstated") withholding credits in generally the same manner as mathematical or clerical errors (for simplicity, math errors):

If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit for income tax withheld at the source, or of the amount paid as estimated income tax, the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund may be assessed by the Secretary in the same manner as in the case of a mathematical or clerical error appearing upon the return, except that the provisions of section 6213(b)(2) (relating to abatement of mathematical or clerical error assessments) shall not apply with regard to any assessment under this paragraph.

The contemporaneous 1954 legislative history sheds some light on this provision:

Under this new paragraph refunds caused by erroneous prepayment credits may be recovered by assessment in the same manner as in the case of a mathematical error on the return. For example, assume a case in which the tax shown on the return is $100, the claimed prepayment credit is $125, and refund of $25 is made, and that it is later determined that the prepayment credits should have been only $70. Under existing law, $30 (the tax of $100 as shown on the return less the $70 credit) can be immediately assessed as tax shown on the return which was not paid, but the remaining $25 must be recovered by suit in court. Under the new provision, the entire $55 can be assessed and collected. [H. Rept. 1337, 83d Cong., 2d Sess. A404 (1954).]

As this history indicates, the legislative impetus for section 6201(a)(3) was the perceived need to give the IRS a means, previously lacking, of recouping erroneous refunds attributable to overstated withholding credits without having to file suit. The legislative solution, as effected in section 6201(a)(3), was to permit the IRS to assess, "in the same manner as in the case of a mathematical or clerical error appearing upon the return," not only the erroneous refund ($25 in the above example), but also the amount of overstated withholding credits that the IRS had previously "allowed" against the tax shown on the return but that had not generated a refund ($30 in the example).[1]

---

[1] At first blush it may seem paradoxical to speak, as does sec. 6201(a)(3), of an "overstated" withholding credit as being "allowed". One would not ordinarily think of an "overstated" amount as being allowed or allowable. But from the example in the above-quoted legislative history it seems clear that the withholding credits were "allowed" only provisionally until the IRS "later

Section 6201(a)(3) authorizes overstated withholding credits to be "assessed". And because under section 6201(a) the IRS' assessment authority pertains only to "taxes", it follows that assessment of overstated withholding credits under section 6201(a)(3) is properly considered as assessment of additional taxes.[2] Furthermore, because section 6213(b) is the only Code provision that expressly addresses the process for making assessments arising out of math errors, it is reasonable to conclude that section 6201(a)(3), in directing that overstated withholding credits may be assessed "in the same manner as in the case of a mathematical or clerical error appearing upon the return," means in the same manner as described in section 6213(b). Otherwise, this directive would not be meaningful. Consequently, we look to section 6213(b) for guidance.

Pursuant to section 6213(b)(1), summary assessment is permitted (i.e., the restrictions applicable to deficiencies are made inapplicable) if a math error on a return gives rise to an amount of tax "in excess of that shown on the return". From this phrase it is clear that the tax "shown on the return" is the amount the taxpayer has shown on the return before any adjustment is made to correct the math error; i.e., the amount "shown on the return" is the amount that reflects the math error. Because there is no suggestion in the Code that the amount of tax "shown on the return" should mean different things in different sections, the same analysis holds true in determining the impact of a math error on the tax "shown * * * [on the] return" under section 6211(a)(1) (defining "deficiency" by reference to the amount of tax shown on the return) and section 6664(a)(1) (defining "under-

_____

determined" that they were overstated. Ultimately, the overstated withholding credits, by virtue of being overstated, were not in fact "allowed" but instead were made subject to the summary assessment provisions of sec. 6201(a)(3). Similarly, although the statute refers to overstatements as being "allowed against the tax shown on the return", and hence (as Judge Gustafson notes) as being distinct from the tax shown on the return, this phrase merely describes which "allowed" "overstated" amounts are made subject to the operation of sec. 6201(a)(3). The more meaningful consideration is the effect of the statute's operation upon these amounts. As described in more detail *infra*, in permitting these overstated amounts to be assessed in the same manner as math errors "appearing upon on the return", the effect of sec. 6201(a)(3) is to treat the overstated withholding credits as part of the amount shown (erroneously) on the return.

[2] Indeed, in the example in the legislative history, in order to recoup the $25 erroneous refund in the manner provided in sec. 6201(a)(3), the IRS must assess not only the original $100 shown on the return but also the $25 associated with the erroneous refund, as an additional amount of tax.

payment" by reference to the amount of tax shown on the return).

Furthermore, because section 6201(a)(3) directs that overstated withholding credits be assessed in the same manner as math errors, it is reasonable to conclude that the same analysis holds true for overstated withholding credits. In other words, for overstated withholding credits under section 6201(a)(3), as for other types of math errors under section 6213(b)(1), summary assessment is permitted if overstated withholding credits give rise to an amount of tax "in excess of that shown on the return". Sec. 6213(b)(1). As with math errors, this means that the amount of tax "shown on the return" is the amount shown by the taxpayer that reflects the overstated withholding credits. Again, absent some contrary statutory signal, it is reasonable to conclude that this result carries over to section 6664(a)(1), where tax "shown * * * [on the] return" is a relevant consideration. [3] In short, under this statutory framework the "amount shown as the tax by the taxpayer on his return" under section 6664(a)(1)(A) is the amount that reflects reduction for excess withholding credits. This is precisely the result achieved by the regulation. [4]

The legislative history of section 6664(a) indicates that its new (in 1989) definition of "underpayment" was not intended to differ "substantively" from prior law. H. Rept. 101–247, at 1394 (1989). But in the same sentence this legislative history states that the new definition was intended to "simplify and coordinate" diverse "underpayment" definitions under former law. *Id.* And in fact the new "underpayment" definition in section 6664(a) differs in various ways from the old "underpayment" definitions which it replaced. [5] Of special impor-

---

[3] A prominent example of a contrary statutory signal appears in sec. 6211(b)(1), which expressly excludes withholding credits from the amount "shown on the return" for purposes of determining a deficiency. Although the old "underpayment" definition of former sec. 6653(c)(1) incorporated these provisions by cross-reference, this linkage between the sec. 6211 "deficiency" definition and the current sec. 6664(a) definition was broken in 1989, as discussed in more detail *infra*.

[4] The effect is to increase the amount of the underpayment by the amount of overstated withholding credits. It might be noted that to be evenhanded the regulation conversely permits unclaimed but otherwise allowable withholding credits to *reduce* the amount of any underpayment. See sec. 1.6664–3(c), Income Tax Regs.

[5] The new "underpayment" definition in sec. 6664(a) replaced at least two different "underpayment" definitions that appeared in these sections of prior law: (1) Former sec. 6653(c)(1), pertaining to additions to tax for negligence and fraud for purposes of income, estate, gift, and certain excise taxes; and (2) former sec. 6653(c)(2), pertaining to additions to tax for negligence and

tance for present purposes, it differs from the former section 6653(c)(1) definition by dropping the cross-reference to the section 6211 "deficiency" definition with its directive that the "tax imposed" and the "tax shown on the return" should be "determined without regard to" withholding credits, among other things.

Judge Gustafson suggests that this striking difference between these two "underpayment" definitions is of no consequence. Citing the 1944 legislative history of section 6211, he contends that the phrase "determined without regard to" was meant merely to clarify that "refunds" of claimed overpayments of withheld tax should not increase any deficiency. He suggests that this "clarification" was omitted from the section 6664(a) "underpayment" definition merely because section 6664 defined "rebates" in such a manner as to eliminate the former confusion about "refunds", making the phrase "determined without regard to" redundant and unnecessary.[6] See Gustafson op. pp. 535–536.

But this analysis fails to take into account the problem of *erroneous* refunds arising from overstated withholding credits. As we have seen, Congress separately addressed that problem in 1954 with the enactment of section 6201(a)(3), authorizing the IRS to process an assessment to recover or disallow excess withholding credits as an adjustment to the income tax return on which the credit was claimed. The former section 6653(c)(1) "underpayment" definition excluded such amounts from an underpayment only by virtue of the definition's express linkage to the "determined without regard to" phrase of section 6211(b). The breaking of that linkage in 1989 in the new section 6664(a) "underpayment" definition had the consequence of permitting overstated withholding credits to be factored into an underpayment, as provided by the regulation.[7]

---

fraud relating to taxes other than as described in sec. 6653(c)(1). Of these two former "underpayment" definitions, only the first incorporated by cross-reference the sec. 6211 "deficiency" definition with its directive that withholding taxes should be disregarded in determining the "tax imposed" and the "tax shown on the return".

[6] Under this analysis it might be thought that the phrase "determined without regard to" was also unnecessary and redundant in sec. 6211, since it contains the same definition of "rebate" as does sec. 6664(a). See secs. 6211(b)(2), 6664(a) (flush language). But of course interpretations that render statutory language unnecessary or redundant are generally disfavored. See 2A Singer & Singer, Sutherland Statutory Construction, sec. 46:6 (7th ed. 2007).

[7] For similar reasons, I also respectfully disagree with Judge Wherry's dissent, which depends in large measure on the assumption that "the amount shown as the tax by the taxpayer on his

Continued

In the final analysis, "the amount shown as the tax by the taxpayer on his return" is a term of art, as is the section 6664(a) definition of "underpayment" of which it is a component. That the meanings of these terms of art may not be immediately plain on their face is attributable in part to the intricate interplay of Code provisions. But the regulation is based upon a construction of these terms and of the larger statutory framework that is, in my view, not merely permissible but correct. For these reasons and the reasons stated in the majority opinion, the regulation is valid.

COLVIN, COHEN, GALE, MARVEL, GOEKE, KROUPA, HOLMES, and HAINES, *JJ.*, agree with this concurring opinion.

————————

WHERRY, *J.*, dissenting: I disagree with the majority to the extent it holds section 1.6664–2(c)(1), Income Tax Regs.,[1] to be a permissible construction of section 6664(a)(1)(A), for many of the reasons Judge Gustafson articulates in his finely crafted dissent.

Not only is section 1.6664–2(c)(1), Income Tax Regs., at variance with the statute it purports to interpret; it also renders the totality of the Commissioner's regulatory scheme, as set forth in section 1.6664–2, Income Tax Regs., contradictory and unreasonable. I would, therefore, hold invalid section 1.6664–2(c)(1), Income Tax Regs., and certain regulatory examples inextricably linked with it.[2] Ignoring these provisions, I find that the remainder of section 1.6664–2, Income

return" under sec. 6664(a)(1)(A) cannot reflect any reduction for excess withholding credits. I also respectfully disagree with certain technical aspects of Judge Wherry's analysis, particularly his suggestion that overstated withholding credits are properly considered amounts "collected without assessment" under sec. 1.6664–2(d), Income Tax Regs., which pertains to sec. 31 credits which are "allowable". By definition, overstated withholding credits are not "allowable", and in all likelihood (as is true in the case before us) the amounts on which they are predicated have never been "collected". Properly construed, the regulation does not give rise to the "double-counting error" that concerns Judge Wherry. See Wherry op. pp. 525–526.

[1] Sec. 1.6664–2(c), Income Tax Regs., was adopted on Jan. 9, 2007, pursuant to T.D. 9309, 2007–1 C.B. 497, which also removed sec. 1.6664–2T, Temporary Income Tax Regs., 70 Fed. Reg. 10037 (Mar. 2, 2005). The latter, in turn, had replaced the prior final regulation, sec. 1.6664–2(c), Income Tax Regs., adopted on Dec. 31, 1991, pursuant to T.D. 8381, 1992–1 C.B. 374. The temporary regulation, issued to modify the rules relating to qualified amended returns contained in the prior final regulation, had retained par. (c)(1) of that regulation unchanged. The current version of sec. 1.6664–2(c)(1), Income Tax Regs., adopted on Jan. 9, 2007, is identical to the version adopted on Dec. 31, 1991, and in effect during the tax years at issue. Also, "both parties agree that the regulation * * * is applicable to the computation of the underpayments in the instant case." See majority op. p. 504.

[2] See *infra* note 9.

Tax Regs., is sufficiently consistent, both with the statute and among its constituent parts, to sustain a section 6663 civil fraud penalty here. I would, however, impose that penalty not on the entire amount by which petitioner overstated his withholding credits, but only on the portion of the overstated withholding credits that he fraudulently claimed and received as a refund.

## I. *Opening the Door to Withholding Credits*

The majority asserts, without explanation, that "Neither paragraph (1)(B) [of section 6664(a) relating to amounts collected without assessment] nor (2) [of section 6664(a) relating to rebates] applies in this case." See majority op. p. 503. The majority, thus, accepts respondent's claim that in each of petitioner's tax years at issue the amount of a section 6664(a)(2) rebate was, respectively, zero. In failing to subject this claim to scrutiny, the majority has denied itself the opportunity to appreciate the creativity and complexity underlying section 1.6664–2(d), Income Tax Regs. This section of the regulations is not mentioned in either petitioner's or respondent's briefs but, nonetheless, constitutes the basis for arriving at respondent's result under section 1.6664–2(c)(1), Income Tax Regs., which petitioner challenges and respondent defends.

Siding with respondent, the majority accurately observes that "the statutes do not speak expressly to the precise issue whether withholding credits can be taken into account when calculating an underpayment for purposes of sections 6663 and 6664(a)." See majority op. p. 508. I suggest that respondent finds the statutory hook for his regulatory innovation not in section 6664(a)(1)(A), whose plain meaning, as Judge Gustafson points out, could hardly be clearer, but instead in section 6664(a)(1)(B).

### A. *Section 6664(a)(1)(B), Not Section 6664(a)(1)(A), Turns the Key*

Section 6664(a)(1)(A) replicates the operative language of section 6211(a)(1)(A), the parallel provision in the definition of deficiency ("the amount shown as the tax by the taxpayer on his return"). In contrast, section 6664(a)(1)(B) uses words slightly different from those of its deficiency counterpart, sec-

tion 6211(a)(1)(B). Whereas section 6664(a)(1)(B) specifies "amounts *not so shown* previously assessed (or collected without assessment)", section 6211(a)(1)(B) refers to "amounts previously assessed (or collected without assessment) *as a deficiency*". (Emphasis supplied.) When compared with section 6211(a)(1)(B), section 6664(a)(1)(B) contains the additional qualifying phrase "not so shown" before "previously assessed" but omits the qualifying phrase "as a deficiency" after the parenthetical "(or collected without assessment)".

Relying on that omission, the Commissioner has concluded in section 1.6664–2(d), Income Tax Regs., that the additional qualifier "not so shown" in section 6664(a)(1)(B) does not apply to the parenthetical "(or collected without assessment)". In other words, the Commissioner reads section 6664(a)(1)(B) as referring to two different kinds of amounts: (1) Those not shown on the return that were previously assessed; and (2) those that were collected without assessment. This taxonomy, in turn, allows the Commissioner to define the latter amounts as

the amount by which the total of the credits allowable under section 31 (relating to tax withheld on wages) and section 33 (relating to tax withheld at source on nonresident aliens and foreign corporations), estimated tax payments, and other payments in satisfaction of tax liability made before the return is filed, exceed the tax shown on the return (provided such excess has not been refunded or allowed as a credit to the taxpayer). [Sec. 1.6664–2(d), Income Tax Regs.]

Section 6664(a)(1)(B), and its differences with section 6211(a)(1)(B), creates an opening, through which the Commissioner has dragged withholding credits into the equation for calculating an underpayment.[3]

### B. *Withholding Credit Is Amount Collected Without Assessment Except When I Say It Is Not*

Unfortunately for the Commissioner, neither the preamble to the proposed or final regulations nor the regulations themselves clarify why including withholding credits in amounts collected without assessment, under section 6664(a)(1)(B),

---

[3] As evidence, consider the preamble to the proposed regulations, which had justified the inclusion of withholding credits in amounts collected without assessment under sec. 6664(a)(1)(B), even though such credits are excluded under sec. 6211(a)(1)(B), by arguing that the amount of an underpayment is reduced by amounts collected without assessment whereas the amount of a deficiency is not. Notice of Proposed Rulemaking, 56 Fed. Reg. 8947 (Mar. 4, 1991).

also requires that we reduce amounts shown as tax under section 6664(a)(1)(A) by any overstated withholding credits. Even worse, under the plain meaning of the Commissioner's own regulations, in a case where there is no deficiency as defined in section 6211(a), a refund of overstated withholding credits would constitute a rebate under section 6664(a)(2). Consequently, the regulations would count this refunded amount twice in calculating an underpayment, once by reducing the amount shown as the tax pursuant to section 1.6664–2(a) and (c)(1), Income Tax Regs., and then again as a rebate pursuant to section 1.6664–2(a) and (e), Income Tax Regs.

Respondent tries to disavow this anomalous effect of his own handiwork. Respondent's posttrial brief and section 1.6664–2(g), *Examples* (*1*) and (*3*), Income Tax Regs., imply that when withholding credits are refunded, they cease to be amounts collected without assessment and this cessation somehow has retroactive effect so that the refund does not constitute a rebate within the meaning of section 6664(a)(2). Reaching this conclusion, however, requires reversing the laws of space and time, the rules of logic and grammar, and the force of our own precedent.

Respondent presumably relies on the parenthetical "(provided such excess has not been refunded or allowed as a credit to the taxpayer)" in section 1.6664–2(d), Income Tax Regs., to conclude that when withholding credits are refunded, they no longer constitute amounts collected without assessment. Therefore, according to respondent, the refund cannot be a rebate under section 6664(a)(2). This flies in the face of the obvious implication of the regulatory text itself that until such time as a withholding credit is refunded, it remains an amount collected without assessment. In fact, section 1.6664–2(g), *Example* (*2*), Income Tax Regs., suggests as much. It should follow that as long as the tax shown on the return is no less than the tax imposed, so that there is no deficiency under section 6211(a), any refund of the withholding credit could only have been "made on the ground that the tax imposed was less than * * * Amounts not so shown previously assessed (or collected without assessment)". Sec. 1.6664–2(e), Income Tax Regs.

### C. *In a Galaxy Far, Far Away*

Respondent appears to construct a multiverse version of reality in which the moment a withholding credit is refunded, it enters a parallel universe, as it were, where the refunded amount was never an amount collected without assessment to begin with. Tax law, alas, must inhabit our universe where the arrow of time can move in only one direction and cause must precede its effect. If a withholding credit is an amount collected without assessment, then it must remain so until it is refunded. And if the refund, when made, is made on the ground that the tax imposed is less than the amount of withholding credits, then that refund must constitute a rebate under section 6664(a)(2).

Respondent's difficulty lies in the fact that the statutory design envisions any amount collected without assessment as potentially affecting the calculation of an underpayment in two ways: (1) Negatively, under section 6664(a)(1)(B); and (2) positively, under section 6664(a)(2). [4] Because respondent has included withholding credits in amounts collected without assessment under section 6664(a)(1)(B), his attempt to deny their existence in computing a rebate under section 6664(a)(2) is logically irreconcilable.

Grammar and our own precedent also undermine respondent's cause. The Commissioner's own words in the regulations refer to the amount by which withholding credits "and other payments in satisfaction of tax liability made before the return is filed, exceed the tax shown on the return (pro-

---

[4] Sec. 6664(a) establishes the following relationship between underpayment and an amount collected without assessment:

Underpayment equals the amount of tax imposed minus (the amount shown as the tax by the taxpayer on his return plus all amounts not so shown previously assessed, or collected without assessment, minus the amount of rebates made).

Sec. 1.6664–2(a), Income Tax Regs., accurately represents this relationship in the following algebraic expression:

Underpayment = W – (X + Y – Z), where W = the amount of income tax imposed; X = the amount shown as the tax by the taxpayer on his return; Y = amounts not so shown previously assessed (or collected without assessment); and Z = the amount of rebates made.

Rearranging the terms yields the following equivalent expression:

Underpayment = (W + Z) – (X + Y).

It is easy to see that an increase of $1 in the amount collected without assessment increases Y and, thereby, reduces underpayment by $1. However, to the extent that this $1 is refunded "on the ground that the tax imposed was less than the excess of * * * [(X + Y)] over the rebates previously made", sec. 6664(a)(2), the resulting increase in Z will increase underpayment by the same amount.

vided such excess *has not been* refunded or allowed as a credit to the taxpayer)." Sec. 1.6664–2(d), Income Tax Regs. (emphasis supplied). The use of the present perfect tense in the parenthetical dictates that the parenthetical apply at the time that the underpayment is calculated. We have long maintained that for purposes of the civil fraud penalty, the base on which the penalty is imposed be determined as of the time when the return is filed and not any later time such as when the notice of deficiency is issued. See, e.g., *Stewart v. Commissioner*, 66 T.C. 54 (1976).

> Underpinning such decisions was the rationale that a taxpayer should not, after fraudulently understating his tax liability, retain the power to avoid the fraud penalty by the simple expedient of later paying the remainder of his correct tax upon discovering his return was under audit. * * * [*Id.* at 58–59.]

It would surely be perverse to allow respondent's discretion in handling a refund claim to affect the amount of petitioner's underpayment well after petitioner has filed his return.

Clearly, then, so long as a taxpayer has no deficiency under section 6211(a), the plain meaning of the regulations' language would cause a refund of a withholding credit to be a rebate under section 6664(a)(2).[5] Further, any refund that this taxpayer obtains by overstating withholding credits would also constitute a section 6664(a)(2) rebate since this refund must necessarily have been "made *on the ground that* the tax imposed was less than" (emphasis supplied) the amounts collected without assessment. Sec. 6664(a). In fact, there could exist no other grounds for making this refund.

---

[5] A sec. 6211(a) deficiency could arguably cause a rebate under sec. 6664(a)(2) to be smaller by the same amount. To see this, consider a situation where "the amount by which the tax imposed * * * exceeds * * * the amount shown as the tax by the taxpayer upon his return" is $1. This would create a deficiency of $1 under sec. 6211(a). It may be argued that this $1 could not be included in "so much of * * * [a refund] as was made on the ground that the tax imposed was less than the excess of * * * [(X + Y), as defined *supra* note 4] over the rebates previously made." Sec. 6664(a). Under this argument, any sec. 6664(a)(2) rebate would be reduced by $1. Even though a sec. 6211(a) deficiency may result in a smaller rebate under sec. 6664(a)(2), the sec. 6664(a) formula for underpayment would automatically pick up the deficiency to leave the amount of underpayment, if any, unchanged. See *supra* note 4 for the algebraic formula for computing the underpayment. See also *infra* note 10, discussing the converse case, where the tax shown on the return exceeds the tax imposed, and *infra* note 11, deriving the numerical results for such a converse case.

## II. *Taking the Blue Pencil to the Commissioner's Drafting*

Finally, to the case of Rick D. Feller, where the notices of deficiency evidence the absence of a section 6211(a) deficiency in each of the tax years at issue. For the reasons discussed above, section 1.6664–2(d) and (e), Income Tax Regs., would cause petitioner's section 6664(a) underpayment to include so much of his overstated withholding credits that he claimed and received as a refund. However, if the challenged regulation, section 1.6664–2(c)(1), Income Tax Regs., is valid, we would consider the overstatement of withholding credits yet again. Specifically, we would adjust the tax shown on the return by subtracting from it the entire amount of the overstated withholding credits. [6] We would then use this adjusted figure, rather than the actual tax shown on the return, to calculate petitioner's underpayment. The refunded portion of the overstated withholding credits would, thus, be counted one more time. [7] This bizarre result is untenable, and either section 1.6664–2(c)(1), Income Tax Regs., or both section 1.6664–2(c)(1) and (d), Income Tax Regs., must give way. [8]

---

[6] It is unclear from the regulations whether the challenged adjustment under sec. 1.6664–2(c)(1), Income Tax Regs., to the amount of tax shown on the return also purports to cover the calculation of a sec. 6664(a)(2) rebate under sec. 1.6664–2(e), Income Tax Regs. Compare sec. 1.6664–2(a)(1)(i), Income Tax Regs. ("The amount shown as the tax by the taxpayer on his return (as defined in paragraph (c) of this section)"), with sec. 1.6664–2(e)(1)(i), Income Tax Regs. ("The amount shown as the tax by the taxpayer on his return" without a cross-reference to "paragraph (c) of this section"). However, the final amount of any sec. 6664(a)(2) rebate calculated under sec. 1.6664–2(e), Income Tax Regs., would remain unchanged, whether or not sec. 1.6664–2(c)(1), Income Tax Regs., applies.

Applying sec. 1.6664–2(c)(1), Income Tax Regs., to this calculation would have two equal and opposite effects that would cancel each other out. On the one hand, the amount of tax shown on the return under sec. 1.6664–2(e)(1)(i), Income Tax Regs., would be reduced by the amount of the challenged adjustment. On the other hand, however, amounts collected without assessment under sec. 1.6664–2(e)(1)(ii), Income Tax Regs., would be increased by the same amount. See sec. 1.6664–2(d), Income Tax Regs. (restricting amounts collected without assessment to those that "exceed the tax shown on the return"). Since the calculation of a sec. 6664(a)(2) rebate entails adding the respective amounts under sec. 1.6664–2(e)(1)(i) and (ii), Income Tax Regs., the net effect would be zero.

[7] See *infra* note 11 showing such double-counting of overstated withholding credits for petitioner's 1992 tax year.

[8] Quite apart from the double-counting of the refunded portion of overstated withholding credits, the challenged adjustment under sec. 1.6664–2(c)(1), Income Tax Regs., introduces another inconsistency, and a potentially fatal one, with the remaining provisions of the regulations. Under sec. 1.6664–2(d), Income Tax Regs., "amount 'collected without assessment' is the amount by which * * * [withholding credits] and other payments in satisfaction of tax liability made before the return is filed, exceed the *tax shown on the return* (provided such excess has not been refunded or allowed as a credit to the taxpayer)." (Emphasis supplied.) Sec. 1.6664–2(c)(1), Income Tax Regs., says that the adjustment to the tax shown on the return applies "For purposes of paragraph (a) of this section". And though the term "amount collected without assessment" is fully defined only in sec. 1.6664–2(d), Income Tax Regs., "paragraph (a) of this section" certainly mentions and uses it as an input in the underpayment formula set forth there. A literal

I agree with Judge Gustafson that "section 6664(a)(1)(A) is not ambiguous, and under the Supreme Court's *Chevron* analysis, the inquiry stops there." Gustafson op. p. 541. Moreover, as I have shown, section 1.6664–2(c)(1), Income Tax Regs., as currently written, causes the Commissioner's regulatory scheme to generate results that are incorrect, illogical and incoherent. I would, therefore, invalidate section 1.6664–2(c)(1), Income Tax Regs. [9]

However, I also believe that the omission of the phrase "as a deficiency" in section 6664(a)(1)(B), when compared with section 6211(a), leaves the former sufficiently ambiguous to invite regulatory interpretation. Under "step 2" of a *Chevron* analysis, I would then consider whether the interpretation that the Commissioner has provided in section 1.6664–2(d), Income Tax Regs., is "based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

The Commissioner's interpretation is by no means "the only one * * * [he] permissibly could have adopted". *Id.* n.11. But I can find nothing in the statute that would indicate that Congress would not have sanctioned including withholding credits in amounts previously collected without assessment. See *id.* at 845. Further, as the majority discusses at length, there is sufficient legislative history to support the proposition that Congress wanted to distinguish an underpayment under section 6664(a) from a deficiency under section 6211(a). I would, therefore, defer to respondent's interpreta-

reading of this applicability provision would require the challenged adjustment to be made to all the terms that go into the underpayment formula of sec. 1.6664–2(a), Income Tax Regs., including amount collected without assessment. As a consequence, depending upon the facts of a particular situation, none, some or all of the benefits that respondent seeks from the challenged adjustment in par. (a) would have to be given up in par. (d). The results could be startling in a case, such as petitioner's, where respondent has relied on the challenged adjustment to reduce the amount shown as tax to a negative number. Invalidating sec. 1.6664–2(c)(1), Income Tax Regs., would, thus, confer the added benefit of precluding this self-defeating construction and salvaging the remainder of sec. 1.6664–2, Income Tax Regs.

By comparison, invalidating sec. 1.6664–2(d), Income Tax Regs., would eviscerate the entire regulatory venture. I do not believe that in the absence of sec. 1.6664–2(d), Income Tax Regs., sec. 1.6664–2(c)(1), Income Tax Regs., or for that matter, any other provision of sec. 1.6664–2, Income Tax Regs., can stand on its own since, as explained above, sec. 1.6664–2(d), Income Tax Regs., is the provision that enables taking withholding credits into account in computing an underpayment.

[9] I would also invalidate sec. 1.6664–2(g), *Examples* (*1*) and (*3*), Income Tax Regs., holding them to be unreasonable and impermissible constructions of the Commissioner's own text contained in sec. 1.6664–2(d), Income Tax Regs.

tion of section 6664(a)(1)(B), which he provides in section 1.6664–2(d), Income Tax Regs.

Applying the unambiguous plain language of that regulation section to petitioner's case and tracing its consequences sequentially through section 1.6664–2(e) and (a), Income Tax Regs., I would find underpayments in the amounts of the overstated withholding credits claimed and received as refunds. [10] I would, therefore, sustain a section 6663 civil fraud penalty not on the entire amount by which petitioner overstated his withholding credits for each tax year at issue but only on such portion of the overstated withholding credits as he had claimed and received as a refund. [11]

---

[10] Respondent did not determine a sec. 6211(a) deficiency for any of petitioner's tax years at issue. However, for one or more of these years petitioner had in fact overstated his tax liability, so that the amount shown on the return exceeded the tax imposed. Ceteris paribus, this would cause a sec. 6664(a)(2) rebate to be larger by the amount of the overstatement. However, the sec. 6664(a) underpayment would remain unchanged in the amount of the total refund. See *infra* note 11, establishing this result for petitioner's 1992 tax year, where the amount shown as tax did, in fact, exceed the tax imposed. Cf. *supra* note 5 (discussing the case of a sec. 6211(a) deficiency).

[11] This is the exact amount that one obtains as a sec. 6664(a) underpayment by applying the formula set forth in sec. 1.6664–2(a)(2), Income Tax Regs., and discussed *supra* note 4, without giving effect to the challenged adjustment under sec. 1.6664–2(c)(1), Income Tax Regs. I formally demonstrate this below for petitioner's 1992 tax year. I then show the impact of the challenged adjustment on petitioner's 1992 underpayment amount, highlighting the double-counting of the refunded portion of the overstated withholding credits. Finally, I compare petitioner's 1992 underpayment amount, computed with and without the challenged adjustment, to the underpayment that respondent actually determined.

Recall from *supra* note 4 that the required inputs for the underpayment formula are:

$W$ = the amount of income tax imposed;
$X$ = the amount shown as the tax by the taxpayer on his return;
$Y$ = amounts not so shown previously assessed (or collected without assessment); and
$Z$ = the amount of rebates made.

For his 1992 tax year petitioner claimed and received a refund of $86,181, $5,328 of which consisted of claimed excess Social Security tax withheld. The record is silent on the legitimacy or otherwise of such claimed withholdings, and respondent has not treated them as overstated withholdings in applying the challenged adjustment under sec. 1.6664–2(c)(1), Income Tax Regs. For purposes of this exercise, therefore, I will ignore the claimed excess Social Security withholdings and assume a refund amount of $86,181 less $5,328, or $80,853.

Respondent determined petitioner's 1992 tax liability to be $30,022, whereas petitioner had written a figure of $57,244 on line 53 of his 1992 Form 1040, U.S. Individual Income Tax Return, against the words "This is your total tax". Petitioner claimed withholdings of $138,097, of which $3,097 were actual and the remaining $135,000 were fictitious. Thus, in the underpayment formula, $W$ is $30,022 and $X$ is $57,244. Also, $Y$ is zero and $Z$ is $108,075.

Note that $Y$ consists of amounts actually collected without assessment, but only to the extent they "exceed the tax shown on the return". Sec. 1.6664–2(d), Income Tax Regs. Since actual withholdings of $3,097 were less than the $57,244 of tax shown on the return, $Y$ is set to be zero. Further, $Z$ is the amount of the sec. 6664(a)(2) rebate, calculated pursuant to sec. 1.6664–2(e), Income Tax Regs., as follows. The rebate would consist of the excess of the tax imposed over the amount specified in sec. 1.6664–2(e)(1), Income Tax Regs. The latter is the higher of the amount shown as the tax, or $57,244, and the total claimed withholdings, or $138,097. This yields: $138,097 − $30,022 = $108,075, which is larger than the refund of $80,853 by exactly the amount by which petitioner overstated his tax liability, or $27,222. This $27,222 (in addition

III. *Conclusion*

I believe that the Commissioner could have drafted an expanded version of the current section 1.6664–2(d), Income Tax Regs., in a manner that delivered results mathematically identical to those that section 1.6664–2(c)(1), Income Tax Regs., seeks to attain. He could have done so without the

_____

to the $80,853 refund) is also a rebate, and one trivially so in the sense that it is an abatement or credit of a self-reported and immediately assessable tax liability, and such abatement or credit must necessarily have been "made on the ground that the tax imposed was less than the * * * [tax shown on the return]". Sec. 1.6664–2(e), Income Tax Regs.

Begin with the formula for underpayment from *supra* note 4,

Underpayment   =   (W + Z) – (X + Y).

Since Y is zero, the formula can be simplified,

Underpayment   =   W + Z – X.

The numbers for W, Z, and X, from above, are $30,022, $57,244, and $108,075, respectively. Plugging these numbers in the formula,

Underpayment   =   W + Z – X
              =   $30,022 + $108,075 – $57,244
              =   $138,097 – $57,244 = $80,853.

The $80,853 underpayment equals the amount of the refund, and this proves the claim made at the outset. Now, consider the impact of the challenged adjustment under sec. 1.6664–2(c)(1), Income Tax Regs. The adjustment would reduce the amount of tax shown on the return of $57,244 by the fictitious withholdings of $135,000 and, thus, arrive at a negative number for X of –$77,756. The numbers for W, Z, and Y would be unchanged; i.e., $30,022, $108,075, and zero, respectively. Plugging these numbers in the formula,

Underpayment   =   W + Z – X
              =   $30,022 + $108,075 – (–$77,756)
              =   $138,097 + $77,756 = $215,853.

The $215,853 underpayment is larger than the $135,000 fictitious withholdings by exactly the refund amount of $80,853, demonstrating that the refunded portion of the fictitious withholdings has been counted twice.

Respondent actually determined a 1992 underpayment amount for petitioner of only $104,642. Presumably under authority of sec. 1.6664–2(g), *Example* (*1*), Income Tax Regs., and notwithstanding the plain language of sec. 1.6664–2(d) and (e), Income Tax Regs., respondent declined to recognize the $80,853 refund as a sec. 6664(a)(2) rebate. Curiously, respondent also did not consider as a rebate the $27,222 by which petitioner had overstated his 1992 tax liability. Petitioner had shown this amount as tax, but respondent determined it not to be so and chose not to assess it. Consequently, sec. 1.6664–2(g), *Example* (*1*), Income Tax Regs., would not apply, and this amount would appear to be a rebate, not just for sec. 6664(a)(2) purposes, but even in the deficiency context. See sec. 6211(b)(2). Ignoring it as a rebate caused petitioner's 1992 underpayment to be lower by $27,222.

Respondent's munificence to petitioner did not end there. Instead of using the actual $57,244 figure that petitioner had handwritten as his tax on his return, respondent used an "as adjusted" amount of $60,380 as the tax shown. We, and other courts, have consistently held that a postfiling adjustment or payment cannot mitigate a fraud that was perpetrated when the return was filed. See text *supra* between notes 4 and 5; see also *Badaracco v. Commissioner*, 464 U.S. 386 (1984). Taking a postfiling adjustment of $3,136 into account caused petitioner's 1992 underpayment amount to be lower by the same amount.

In the underpayment formula, respondent set Z to be zero and derived X as follows. Starting with $60,380 as the tax shown, respondent reduced that amount by the fictitious withholdings of $135,000 and, thus, arrived at a negative number for X of –$74,620. Plugging these numbers in the formula,

Underpayment   =   W + Z – X
              =   $30,022 + $0 – (–$74,620)
              =   $30,022 + $74,620 = $104,642.

double-counting error that plagues the current set of regulations. Our mandate, however, is to test the validity of the regulations as the Commissioner has drafted them and seeks to apply them, not to improve or improvise upon them in order to achieve a "just" result. I would hold section 1.6664–2(c)(1), Income Tax Regs., to be an impermissible construction of section 6664(a)(1)(A). I respectfully dissent.

HALPERN and GUSTAFSON, *JJ*., agree with this dissent.

--------

GUSTAFSON, *J*., dissenting: I would hold invalid the regulation on which the fraud penalty at issue depends. Section 6664(a)(1)(A) states an unambiguous term, i.e., "the amount shown as the tax by the taxpayer on his return"; but the IRS's corresponding regulation—26 C.F.R. section 1.6664–2(c)(1), Income Tax Regs.—gives a definition that contradicts almost every substantive word in that statutory term. The regulation modifies the term to mean an amount that—

• is not "shown" but rather has to be derived;

• is not an amount of "tax" but rather is tax reduced by excess credits;

• is not shown "by the taxpayer" but rather is asserted by the IRS as the result of its examination, in contradiction of what was shown "by the taxpayer"; and

• is not shown "on the return" but rather must be derived from information that is not "on the return".

The regulation thereby undertakes to impose the penalty to an extent that the statute does not.

I. *Introduction*

Petitioner Rick D. Feller filed income tax returns for 1992 through 1997 on which he reported income tax liabilities greater than he actually owed, because he incorrectly reported as wages certain amounts that he did not in fact receive. For example, for 1992 he reported a total tax liability of $60,380,[1] whereas the IRS determined that in fact he owed

---

[1] The actual amount of "total tax" shown on line 53 of Mr. Feller's 1992 return is $57,244.58; but on line 19 of the IRS's notice of deficiency the "Total tax shown on return or as previously adjusted" is $60,380. Presumably there are previous adjustments that would account for the difference, but the record does not show them. For simplicity's sake and ease of comparison, I use the IRS's amount.

only $30,022. That is, Mr. Feller's returns *overstated* his total tax liability.

However, Mr. Feller also incorrectly reported, as Federal tax withholding from wages, certain amounts that were not in fact withheld from his wages (because the wages were fictitious). For example, for 1992 he reported total tax withholding from wages as $138,097, whereas only $3,097 was actually withheld, and $135,000 was a fraudulent overstatement of his withholding. As a result, Mr. Feller reported on his returns net amounts due that were much less than he actually owed. That is, his returns *understated* his net amount due to the IRS and in fact claimed instead for 1992 (for example) a refund of $86,181.

When Mr. Feller was discovered, he pleaded guilty to submitting a false tax return for one of the years in issue. For his crime he was sentenced to 15 months in prison.

The IRS also determined against Mr. Feller a civil fraud penalty pursuant to section 6663(a), which penalty applies "[i]f any part of any *underpayment of tax* required to be shown on a return is due to fraud". (Emphasis added.) The term "underpayment" is defined in section 6664(a) of the Internal Revenue Code and in section 1.6664–2(a) of the Income Tax Regulations (26 C.F.R.). This case turns on the meaning of "underpayment" in section 6664(a), which in turn depends on the meaning of the term "amount shown as the tax by the taxpayer on his return" that appears in that statute.

## II. *The statute and regulation at issue*

### A. *The statute: section 6664(a)*

Section 6664(a) defines the "underpayment" to which the fraud penalty of section 6663(a) applies. In simplified terms, the "underpayment" is the excess of one's actual liability over his reported liability—i.e., tax "imposed" minus tax "shown" equals "underpayment". Section 6664(a) provides as follows:

SEC. 6664(a). UNDERPAYMENT.—For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—

    (1) the sum of—

      (A) the amount shown as the tax by the taxpayer on his return, plus

    (B) amounts not so shown previously assessed (or collected without assessment), over

  (2) the amount of rebates made.

For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.[2]

This definition of "underpayment" follows closely the definition of a tax "deficiency" in section 6211(a), employing terms used in that section ("tax imposed", "exceeds the excess", "amount shown", "previously assessed"); and the definition of "rebate" follows closely the definition of the same term in section 6211(b)(2).

However, unlike the definition of "underpayment" in section 6664(a), the definition of "deficiency" in section 6211(a) is qualified by section 6211(b)(1), which provides that "For purposes of this section [i.e., not "For purposes of this title"] * * * [t]he tax imposed by subtitle A and the tax shown on the return shall both be determined * * * without regard to the credit under section 31 [i.e., "Tax Withheld on Wages"]". Withholding credits are thus explicitly excluded from the Code's "deficiency" equation; but the Code's "underpayment" equation in section 6664(a) that is at issue here does not mention withholding credits.

B. *The regulation: 26 C.F.R. section 1.6664–2*

The regulation implementing the fraud penalty largely repeats the definition of "underpayment" given in the statute. Moreover, the regulation defines "tax imposed" in a manner consistent with the use of that term in the deficiency context. That is, even though section 6664(a) is, as we have

---

[2] The definition of "rebate" in section 6664(a) incorporates "the amount specified in paragraph (1)", in which subparagraph (A) lacks the phrase "as a deficiency" when compared to the equivalent term in section 6211(a)(1)(B). Whether this might render a portion of the erroneous refunds made to Mr. Feller to be rebates (and thus to increase the underpayment) is a question the parties have not addressed in any detail. Respondent makes no contention that Mr. Feller had any "amount of rebates made", sec. 6664(a)(2), or any "amounts not so shown previously assessed (or collected without assessment)," sec. 6664(a)(1)(B), but rather states in his calculations that those amounts are zero. I therefore disregard rebates in this discussion and use the shorthand definition of "underpayment" (i.e., tax "imposed" minus tax "shown" equals "underpayment"). However, Judge Wherry shows that respondent has a mistaken understanding of section 6664(a) "rebates" that wrongly equates them with section 6211(b)(2) "rebates" despite the phrase "as a deficiency" that is present in section 6211(b)(2) but is absent from section 6664(a). When this error is corrected, the penalty appears to be owing on the portion of the excess credit that was actually refunded.

noted, silent about withholding credits, the regulation borrows from the deficiency context (section 6211(a)) and explicitly defines the minuend of the equation—"tax imposed"—without regard to withholding credits: [3]

(b) Amount of income tax imposed. For purposes of paragraph (a) of this section, the "amount of income tax imposed" is the amount of tax imposed on the taxpayer under subtitle A for the taxable year, determined *without regard to*—

(1) *The credits for tax withheld under sections 31 (relating to tax withheld on wages)* and 33 (relating to tax withheld at source on nonresident aliens and foreign corporations) * * *.

[26 C.F.R. sec. 1.6664–2(b), Income Tax Regs.; emphasis added.]

However, in defining the subtrahend of the equation—the "amount shown as the tax"—the regulation makes one significant emendation:

(c) Amount shown as the tax by the taxpayer on his return—(1) Defined. For purposes of paragraph (a) of this section, the "amount shown as the tax by the taxpayer on his return" is the tax liability shown by the taxpayer on his return, determined without regard to the items listed in §1.6664–2(b)(1), (2), and (3), *except that it is reduced by* the excess of—

(i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) * * * over

(ii) The amounts actually withheld * * * for such taxable year.

[26 C.F.R. sec. 1.6664–2(c), Income Tax Regs.; emphasis added.]

Under this regulation, the "amount shown" is thus first determined "without regard to the items listed in §1.6664–2(b)(1)"—i.e., without regard to withholding credits—but is then reduced by *excess* withholding credits.

Without this provision, if Mr. Feller's "amount shown as the tax" ($60,380 for 1992) is subtracted from his "tax imposed" ($30,358), then the difference is less than zero, he has no underpayment at all, and he is not subject to the

---

[3] That is, the regulation does *not* give a special definition to the minuend, "tax imposed"; and neither respondent nor the majority suggests that the statute is ambiguous in referring to "tax imposed". Much mischief or absurdity might result if "tax imposed by this title" were ambiguous and might refer to tax net of withholding credits. In that event, other Code sections that are like section 6664(a)—i.e., sections that refer to "tax imposed by this title" but do not explicitly exclude the netting of credits—might become problematic. These include section 6001 (requiring that "Every person liable for any tax imposed by this title * * * shall keep such records * * * as the Secretary may from time to time prescribe"), section 6011(a) (requiring that a return be filed by "any person made liable for any tax imposed by this title"), section 6501(a) (providing for assessment of "tax imposed by this title"), and section 6511(a) (setting a deadline for the filing of a claim for refund of "any tax imposed by this title"). These provisions have always been (rightly) understood to apply where there is a tax liability, whether or not that liability has been satisfied by withholding credits.

fraud penalty. The effect of this regulatory provision, however, is to reduce the "amount shown as the tax" (Mr. Feller's $60,380) by the excess withholding credits ($135,000 for 1992) in order to reveal the extent to which the taxpayer under-reported his *net* liability. For Mr. Feller this modification yields an "amount shown" that is negative ($60,360 – $135,000 = –$74,640) and that therefore, when subtracted from "tax imposed", does not decrease his "underpayment" but rather increases it. This regulation thus aims to measure the true culpability of a return like Mr. Feller's, rather than overlooking the excess credits in the computation of the penalty.

III. *Regulations as law*

Under our Constitution, it is Congress that enacts laws. See U.S. Const., art. I, sec. 7. The first enumerated power given to Congress (and not to the Executive) is the "Power To lay and collect Taxes, Duties, Imposts and Excises". *Id.* sec. 8, cl. 1. [4] As the Supreme Court observed in *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 472 (2001):

Article I, § 1, of the Constitution vests "[a]ll legislative Powers herein granted . . . in a Congress of the United States." This text permits no delegation of those powers * * *.

Only the legislature can legislate. Only Congress can enact tax laws.

However, since at least as early as 1828 (i.e., 40 years after the Constitution was ratified), the Secretary of the Treasury has been explicitly authorized by statute to promulgate "regulations". [5] Such regulations acquire the force of law only derivatively, through statutes enacted by Congress—

---

[4] Article I, section 7, clause 1 includes an additional democratic provision particular to tax law: "All bills for raising revenue shall originate in the House of Representatives"—i.e., the house that (in James Madison's words) "speak[s] the known and determined sense of a majority of the people". See The Federalist No. 58 (James Madison) (the two houses have "equal authority * * * on all legislative subjects, except the originating of money bills", which authority is conferred on "the House [of Representatives], composed of the greater number of members, * * * and speaking the known and determined sense of a majority of the people"). Article I, section 9, clause 4 of the Constitution originally prohibited "direct" taxes; and when the Constitution was amended to curtail that prohibition, the Sixteenth Amendment provided (echoing Article I, section 8) that "The Congress shall have power to lay and collect taxes on incomes".

[5] See Act of May 19, 1828, ch. 55, sec. 10, 4. Stat. 274 ("it shall be the duty of the Secretary of the Treasury, under the direction of the President of the United States, from time to time, to establish such rules and regulations, not inconsistent with the laws of the United States, as the President of the United States shall think proper, to secure a just, faithful, and impartial appraisal of" imported goods, for purposes of customs duties).

either because a statute explicitly authorizes an agency to promulgate "legislative regulations" or because the agency that is charged by law with administering a statute issues "interpretive regulations"[6] that interpret the statute, and the courts defer to that interpretation. See *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–845 (1984).

The parties and the majority of this Court acknowledge that the regulation at issue—26 C.F.R. section 1.6664–2(c)(1)—is in the second category described in *Chevron*—i.e., so-called "interpretive regulations". Such interpretive regulations embody the Treasury "department's construction of a statutory scheme it is entrusted to administer", *Chevron*, 467 U.S. at 844, and are generally authorized in section 7805(a) ("the Secretary shall prescribe all needful rules and regulations for the enforcement of this title").

In reviewing interpretive regulations, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* As the majority explains, following *Chevron* we conduct a two-step review of the regulation: First, we ask "'whether Congress has directly spoken to the precise question at issue'"; and second, if the statute is "'silent or ambiguous'", we ask whether the regulation reflects a reasonable construction of the statute. Majority op. p. 505 (quoting *Chevron*, 467 U.S. at 842–843).

## IV. *Discussion*

There is no question that the deliberate reporting of fictitious withholding credits is fraudulent. There is no question that Congress could well impose a civil penalty on such fraud (in addition to the criminal penalties that it has imposed and

---

[6] Judicial deference to interpretive regulations is relatively recent. Through the mid-20th century, courts and commentators concluded that a general rulemaking grant (such as section 7805(a)) authorizing interpretive regulations that have the force of law would be an unconstitutional delegation of legislative authority. See Kristin E. Hickman, "The Need for *Mead*: Rejecting Tax Exceptionalism in Judicial Deference", 90 Minn. L. Rev. 1537, 1567 (2006). However, "The 1960s and 1970s saw a virtual explosion of agency rulemaking", *id.* at 1574, and there followed the modern deference regimes (culminating in *Chevron*), to which the nondelegation doctrine is no longer perceived as an impediment. But see *Whitman v. Am. Trucking Associations, Inc.*, 531 U.S. 457, 487 (2001) (Thomas, J., concurring) ("none of the parties to these cases has examined the text of the Constitution or asked us to reconsider our precedents on cessions of legislative power. On a future day, however, I would be willing to address the question whether our delegation jurisprudence has strayed too far from our Founders' understanding of separation of powers").

that Mr. Feller has borne). The question is whether in fact Congress did so when it imposed the fraud penalty on "underpayments", defined as "tax imposed" minus "amount shown", or whether instead the Treasury Department went beyond the statute when it promulgated the regulation.

A. *The plain meaning of the statute is not ambiguous.*

The term at issue is "the amount [1] shown [2] as the tax [3] by the taxpayer [4] on his return". Sec. 6664(a)(1)(A). Under section 6664(a) this amount is subtracted from "tax imposed" (i.e., the actual tax liability) to yield the "under-payment". The plain meaning of this term could hardly be clearer:

In the first place, the amount in section 6664(a)(1)(A) is an amount "shown". It is therefore an amount that is visible. The plain language steers us away from an amount that would need to be determined by investigation or correction and points us simply to what is "shown". Section 1.6664–2(c)(1) of the regulations, however, employs the "tax liability shown * * * *except that it is reduced by*" excess credits, which are determined by reference to "amounts *actually* withheld" as compared to "amounts *shown* by the taxpayer on his return as credits". (Emphasis added.) In Mr. Feller's case, the resulting negative number (–$74,640) is not shown anywhere on his 1992 return, nor does the return show the constituent numbers necessary to yield that negative number. Rather, Mr. Feller hid the amount "actually with-held"—i.e., $3,097—and certainly did not cause it to be "shown" on his return. The regulation thus looks to what is deliberately *not* shown and thereby ignores the plain language of the statute that describes an amount "shown".

Second, the amount in section 6664(a)(1)(A) is "tax". Of course, the Code also has provisions about other kinds of amounts—e.g., of income, deductions, costs, basis, exclusions, credits, payments, penalties, and so on—but section 6664(a)(1)(A) refers to an amount of "tax", a term not at all interchangeable with those other kinds of amounts. Section 1.6664–2(c)(1) of the regulations, on the other hand, though it properly begins with the "tax" shown, reduces it by excess withholding credits to yield not the taxpayer's tax shown but a number—in Mr. Feller's case, a fictitious negative number

(–$74,640 for 1992)—that is neither his actual tax liability nor his reported tax liability. This negative number is instead a number that, when used in the underpayment calculation, shows the size of his net liability to the IRS. However, the plain meaning of the statutory language restricts us to "tax" that is shown on the return, and the statutory language gives no warrant for injecting excess credits into the equation.

Third, the amount in section 6664(a)(1)(A) is shown "by the taxpayer". Of course, the Code authorizes the IRS to make its own determinations of amounts relevant to tax liabilities; but plainly section 6664(a)(1)(A) describes an amount shown "by the taxpayer". Section 1.6664–2(c)(1) of the regulations, on the other hand, corrects the amount shown "by the taxpayer" on his return and replaces it with a number determined by the IRS. The formula in the regulation thus wanders from the plain language of section 6664(a)(1)(A), which looks to an amount shown "by the taxpayer".

Fourth, the amount in section 6664(a)(1)(A) is an amount shown "on his return". If Mr. Feller's 1992 return had included a $135,000 entry explicitly for "*excess* credits" (or an amount of tax reduced by $135,000 of excess credits), then there could hardly have been fraud on the return, since that candid reporting would have confessed the very fabrication that was perpetrated on the return. But of course the excess withholding credit amount of $135,000 was an amount that did not appear as such anywhere on, and could not be derived from, his return. By bringing that undisclosed amount into the computation, the regulation contradicts the plain meaning of the statutory description of an amount "on the return".

It is true that some terms in the Code are "terms of art" whose true meaning "may not be immediately plain on their face". Concurring op. p. 516. But this is a term so explicit, so at odds with the regulatory definition, and so consistent with the tax return itself that it cannot be explained away in this fashion. The Form 1040 tax return does not raise any question about the plain meaning of the term but faithfully corresponds to it—and not to the artful revision of the regulation. The return includes a line for "total tax", and withholding credits are reported on the return only *after* that

"total tax" entry. [7] One looks in vain on the Form 1040 for any "show[ing]" of excess withholding credits. More important, one looks in vain on the Form 1040 for any entry denominated "tax" that takes into account any withholding credits, whether "actual" or "shown". Instead, the only "amount shown as the tax by the taxpayer on his return" is a "total tax" amount *before* any payments or credits. On Mr. Feller's tax return for 1992, that "total tax" (before withholding credits) that was "shown as the tax by the taxpayer on [line 53 of] his return" was no less than $60,380. (See *supra* note 1.) Since the "tax imposed" was *less* than this amount, there was no "underpayment" reflected on the return.

B. *The statutory silence about "credits" is no warrant for the innovation in the regulation.*

The majority observes, however, that—

the statutes do not speak expressly to the precise issue whether withholding credits can be taken into account when calculating an underpayment for purposes of sections 6663 and 6664(a).

* * * Section 6664 is silent and ambiguous with respect to the issue before us; i.e., Congress has not directly addressed the meaning of the term "underpayment" when a taxpayer has overstated withholding credits.

[Majority op. p. 508.]

It is true (to put it more precisely) that section 6664(a)(1)(A) does not state whether "the amount shown as the tax by the taxpayer on his return" does or does not take into account withholding credits. However, the very term at issue is "tax" shown, and the unremarkable lack of any mention of "credits" is simply consistent with the statute's meaning

---

[7] On the Form 1040 for 1988—the year before sections 6663 and 6664 were enacted—the "Tax Computation" section (consisting of lines 32 through 40) includes, after the computation of taxable income, a line 38 on which one is to "Enter tax", a line 39 for "Additional taxes", and a line 40 that totals lines 38 and 39. The next section, entitled "Credits" (lines 41 through 47), consists not of credits in the nature of payments against the tax liability but instead credits (such as the child care credit and the foreign tax credit) that are taken into account in figuring the tax liability. (Not included in this section is the "credit" for withheld tax, which is in the nature of a payment.) Thereafter, a section of "Other Taxes" (lines 48 through 53) includes, for example, the self-employment tax and the alternative minimum tax; and it ends with line 53, which reads: "Add lines 47 through 52. This is your **total tax**". Only after this "total tax" on line 53 does the return include an entry (at line 54) for "Federal income tax withheld", in the section of the return entitled "Payments". The net amount due after payments and credits is *not* referred to as tax, but is either an "amount OVERPAID" (line 62) or an "AMOUNT YOU OWE" (line 65). The Forms 1040 for Mr. Feller's years at issue were the same, with only slight differences in some line numbers.

what it says: To state the obvious, "the amount shown as the tax" refers to *tax*. Withholding credits under section 31 are another matter.

Section 6664(a)(1)(A) can be said to be "silent" about withholding credits—but only in the same way that it is silent about the fuel credit under section 34, silent about payments designated to the Presidential Election Campaign Fund under section 6096, silent about interest under section 6601, and silent about a host of other provisions in the Code that Congress could have incorporated into the "underpayment" definition but did not. It is true that when a statute is "silent", that silence may leave a gap that can legitimately be filled by regulation, see *Chevron*, 467 U.S. at 843; but for this purpose a statute can fairly be called "silent" only when it *cannot* be said that "the intent of Congress is clear", see *id.* at 842. Statutory specificity about one subject cannot sensibly be construed as gap-creating "silence" about other subjects. In section 6664(a)(1)(A) Congress was silent about withholding credits because it was providing a rule about tax. When Congress states a plain and unambiguous term involving "the amount shown as the tax by the taxpayer on his return", the IRS cannot take that enactment as an occasion to craft rules about different subject matter *not* addressed in the statute—i.e., excess withholding credits not shown by the taxpayer and not appearing on the return—as if Congress had left a gap to be filled in.

C. *Different language in the deficiency statute does not justify the innovation in the regulation.*

The majority's apparent basis for discerning ambiguity in "the amount shown as the tax" is this: That term appears both in the definition of "underpayment" in section 6664(a) and in the similar but not identical definition of a "deficiency" in section 6211(a). See majority op. p. 507. For purposes of defining a "deficiency", section 6211(b)(1) provides: "The tax imposed by subtitle A and the *tax shown on the return* [8] shall both be determined *without* regard to", inter

---

[8] The term "amount shown as tax by the taxpayer on his return" in section 6664(a)(1)(A) is not identical to the phrase "tax shown on the return" in section 6211(b)(1). However, the latter term in section 6211(b)(1) is evidently shorthand for "amount shown as tax by the taxpayer upon his return" in section 6211(a)(1)(A), so we assume it is equivalent to the same term in

Continued

alia, withholding credits. (Emphasis added.) Section 6664(a) defining "underpayment", on the other hand, has no equivalent "without regard to" provision. This contrast evidently prompts the suggestion that, for purposes of defining a "deficiency", the tax "shown on the return" should be determined *without* regard to withholding credits; but for purposes of defining an "underpayment", the tax "shown on the return" should be determined *with* regard to withholding credits. However, an examination of the origin of section 6211(b)(1) shows that this suggestion is not warranted.

The basic definition of a "deficiency" in section 271 of the 1939 Code, like today's definition in section 6211(a), was "tax imposed" minus "amount shown as the tax"; but in the 1939 Code the "amount shown" was "decreased by the amounts previously abated, credited, *refunded*, or otherwise repaid in respect of such tax" (emphasis added); and the deficiency was therefore increased by those amounts. The 1939 Code had no provision that "tax imposed" or "amount shown" should be "determined without regard to" withholding credits, since those credits had yet to be invented.

The 1939 provision that a "deficiency" would be increased by amounts "refunded" began to be awkward in 1943, when the Current Tax Payment Act of 1943, ch. 120, 57 Stat. 126, provided for the now-familiar mechanism of payroll withholding. For the first time, employers withheld tax from wages, *id.* sec. 2, and the employee claimed that withholding as a credit (i.e., a payment) on his return, *id.* sec. 3, 57 Stat. 139. If that resulted in an overpayment of tax, then the overpayment was refunded to the employee. *Id.* sec. 4, 57 Stat. 140. The next year Congress noted that this regime raised questions about the definition of a "deficiency"[9] (i.e., "tax

---

section 6664(a)(1)(A).

[9] See S. Rept. 885, 78th Cong., 2d Sess. 38 (1944), 1944 C.B. 858, 887:

Under the system of tax collection which now obtains with respect to individuals, it is apparent that in certain cases the estimated tax payments and the tax withheld at source may exceed the tax shown by the taxpayer on his return. Under the procedure instituted by the Commissioner for handling such cases it is contemplated that the excess of such payments (estimated tax and tax withheld at source) over the tax shown on the return shall be refunded to the taxpayer as expeditiously as possible. If, in such cases, it is subsequently determined that the tax imposed under chapter 1 is greater than the tax shown on the return, the existing definition of deficiency would produce an improper result if the amount so refunded is taken into account in ascertaining the amount of the deficiency. For example, if the taxpayer filed a return disclosing a tax of $600 and claiming a credit of $900 for tax withheld at source, $300 would be immediately refunded. If the Commissioner subsequently determines that the correct tax should be $800, the amount of the tax liability in controversy is $200 and, hence, the deficiency should

imposed" over "amount shown" minus "refunds"), which now needed to be revised to make clear that a mere refund of a claimed overpayment of withheld tax (what is now called a "non-rebate refund") did not skew the computation by reducing tax "shown". Congress therefore deleted from section 271 the phrase "decreased by the amounts previously abated, credited, refunded, or otherwise repaid" and in its place incorporated and defined the term "rebate". After this 1944 amendment, section 271 provided (in language very similar to current section 6211):

SEC. 271. DEFINITION OF DEFICIENCY.

(a) IN GENERAL.—* * * "deficiency" means the amount by which the *tax imposed* by this chapter exceeds the excess of—

(1) the sum of (A) the *amount shown* as the tax by the taxpayer upon his return, * * * plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the *amount of rebates*, as defined in subsection (b)(2), made.

(b) RULES FOR APPLICATION OF SUBSECTION (a).—For the purposes of this section—

(1) The *tax imposed* by this chapter and the *tax shown* on the return shall both be determined without regard to payments on account of estimated tax, [and] without regard to the credit under section 35 * * *;

(2) The term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the *tax imposed* by this chapter was less than the excess of the amount specified in subsection (a)(1) over the amount of rebates previously made * * *.

[Individual Income Tax Act of 1944, ch. 210, sec. 14(a), 58 Stat. 245; emphasis added.]

Under subsection (b)(2) of the amended statute (as under today's Code), the "rebate" that decreases "amount shown" (and thereby increases the "deficiency") includes a refund only if the refund is "made on the ground that the tax imposed" is less than what the taxpayer reported, and does not include refunds made on the mere ground that payments and credits exceed the tax that the taxpayer reported as due. And, lest there be any doubt, subsection (b)(1) makes clear

---

be $200. However, the definition contained in existing law would indicate a deficiency of $500, that is, the excess of $800 [actual tax] over ($600 [tax shown] minus $300 [refund]). The proposed amendment corrects this defect by providing that the amount of any such refund shall not be taken into account.

This 1944 legislative history makes it clear that the "determined without regard to" language of former section 271 (now section 6211) is present in the "deficiency" definition only because non-rebate "refunds" once muddled the deficiency definition. That definitional problem never arose with respect to "underpayment", for tax shown was never reduced by "refunds".

that prepayments and withholding credits do not affect the "tax imposed" [10] or the "tax shown".

When the current penalty regime was enacted in 1989, [11] Congress preempted any equivalent confusion about the effect of non-rebate refunds on the computation of an "underpayment". It did so by enacting in section 6664(a) a definition of "underpayment" that, like the 1944 "deficiency" definition, omitted any mention of "refunds" and instead subtracted "rebates" from the tax shown on the return. Admittedly, this new "underpayment" definition did *not* include any instruction that "tax imposed" or "tax shown" is determined without regard to withholding credits and other prepayments. However, the 1944 origin of that language in the deficiency context, set out above, shows that the absence of that instruction in section 6664(a) is not significant. The provision about, and the definition of, "rebates" made such an instruction unnecessary.

The "underpayment" definition, new in 1989, never included any mention of non-rebate "refunds" that might have skewed the definition. That 1943-era confusion as to deficiencies was solved in 1944 by the "rebate" provision; and any potential similar confusion as to underpayments was preemptively solved in 1989 when the "underpayment" definition included, in the first instance, the equivalent "rebate" provision. There was therefore never an occasion for including in section 6664(a) a provision that withholding credits should not affect the computation of tax shown. Such a provision would have been redundant. (And the absence in section 6664(a) of any reminder that "tax *imposed*" is determined without regard to withholding credits did not prevent the agency from so providing, in section 1.6664–2(b) of its regulation, for purposes of computing an underpayment.)

---

[10] It seems a truism to say that "tax imposed" does not include credits; a "credit" is not "imposed"; and the problem that Congress addressed in 1944 concerned tax "shown", not tax "imposed". It is therefore hard to discern the potential error that Congress sought to correct by this clarification as to "tax imposed". However, the phrase "tax imposed" does appear in both the basic definition of a deficiency (i.e., "tax imposed" over tax "shown" minus "rebates") *and* in the definition of the term "rebates"; and the latter inclusion may have made the clarification seem more necessary. The provision survives today in section 6211(b)(1).

[11] The negligence and fraud penalties on "underpayment[s]" were first enacted in 1954 in former section 6653(a) and (b). The definition of "underpayment" in section 6653(c)(1) explicitly incorporated by reference the definition of "deficiency" as corrected in 1944, so that the problem of (non-rebate) "refunds" confusing the definition of "underpayment" never arose under former section 6653.

### D. *Section 6201(a)(3) does not justify the innovation in the regulation*.

Section 6201(a)(3) refers to excess withholding credits that are allowed against "tax shown on the return". The concurring opinion observes the following: Section 6201(a)(3) provides that such overstated withholding amounts are to be "assessed by the Secretary in the same manner as in the case of a mathematical or clerical error", and the provision cross-references section 6213(b). Concurring op. pp. 512–513. Section 6213(b)(1) provides for an assessment of an amount of tax "in excess of that shown on the return", so that the amount "shown on the return" must be an amount that reflects the math error. Concurring op. p. 513. With excess withholding credits, "[a]s with math errors, * * * the amount of tax 'shown on the return' is the amount shown by the taxpayer that reflects the overstated withholding credits." That is, tax "shown" under section 6201(a)(3) must mean tax reduced by excess credits (as the regulation provides under section 6664(a)). Concurring op. p. 514.

It is surely proper to attempt to bring these other sections to bear on the meaning of tax "shown" in section 6664(a), but I submit that there are skips and flaws in this analysis of sections 6201(a)(3) and 6213(b). The House report that the concurring opinion cites clearly states that then-current law (before section 6201(a)(3)) already allowed the IRS to retrieve, without deficiency procedures, any excess credit that had been mistakenly allowed against the tax liability. Retrieval of those credits that had been mistakenly *allowed* against tax liability did not require any new assessment authority to be enacted in section 6201(a)(3). What was new in that section was a procedure for retrieval of *refunded* credits. Section 6201(a)(3) does not cross-reference section 6213(b)(1)—the paragraph critical to the argument in the concurring opinion—but refers only to section 6213(b)(2) (to make clear that it does *not* apply). Section 6201(a)(3) does not state or even imply that excess credits are a constituent of tax "shown". On the contrary, the statute conceives of the tax liability and excess credits as distinct, since it refers to

excess credit "allowed *against* the tax shown on the return". (Emphasis added.)[12]

Furthermore, it is far from clear what the statute means when it states that an overstated credit allowed against tax shown on the return may be "assessed". Payments that are credited (or not credited) against the tax liability do not increase or decrease the amount of the tax liability. If an ostensible payment or credit that was originally allowed against that liability proves in fact to be no good, that hardly increases the amount of tax; instead it decreases the amount of payments that should be entered. The Internal Revenue Manual (IRM) reflects this distinction. It states that an excess withholding credit, once discovered, is in fact not assessed by the IRS as additional tax. Instead, excess credits are recovered either by "an assessment (a TC 290) for the amount of the overstated withholding credit or in limited circumstances with a reversal (TC 807) of the overstated amount." IRM pt. 21.4.5.4.3(4) (Jan. 24, 2008). ("TC 290" is the code for "Additional Tax Assessment", and "TC 807" is the code for "Withholding Credits Reversed".[13]) What is that "limited circumstance" that gets TC 807 treatment?—It is none other than excess credits that have been wrongly applied to the reported liability. The IRM makes it clear that these excess credits wrongly applied are "recovered with a *reversal* of the credit (i.e., TC 807 * * *)" (emphasis added), not by an *assessment* of additional tax. IRM pt. 21.4.5.4.3(6) (Jan. 24, 2008). The IRM gives an example:

Mary Smith filed her 2008 income tax return reporting a tax liability of $700 and withholding credits of $500. She overstated her withholding by $100 and the error was not corrected when IRS processed the return. Since

---

[12] To the same effect, the House report that the concurring opinion cites reflects a clear understanding that "tax shown" is tax (not tax reduced by excess credits, as in section 1.6664–2(c)(1), Income Tax Regs.). In presenting its example, the report twice states that the "tax shown" is $100—not the $70 that would be yielded by subtracting the excess credit of $30 from the tax of $100. H. Rept. 1337, 83d Cong., 2d Sess. A404 (1954). Similarly, the report refers to the excess credits as "$30 (the tax of $100 shown in the return less the [proper] $70 credit)"; and the report says that this $30 amount "can be immediately assessed as tax shown on the return which was not paid". That is, the excess credits are (correctly) described not as affecting the amount of the "tax shown" but rather as affecting the amount of the tax shown that has not been paid. By contrast, an "underpayment" in section 6664(a) is calculated by reference to tax "shown", not by reference to "tax shown that has not been paid". The House report states that the excess credits can be "assessed as tax shown on the return which was not paid". That is, the means by which the IRS is to get the $30 is (the report suggests) an assessment ("as tax shown * * * which was not paid"). This describes not the character of the amount but the means of collection, and it therefore does not address our issue.

[13] See Non-Master File Pocket Guide, IRS Document 10978 (Rev. 10–2006).

Ms. Smith did not claim the overstated amount as a refund (she reported a balance due) and the overstated amount did not result in a refund, a TC 807 may be used to correct the overstatement. [*Id.*]

The House report indicates that the provisions added in 1954 were codifying existing law, so that today's law as to correction of non-refunded excess credits, illustrated in the IRM, is the same as pre-1954 law.

The meaning of tax "shown" in section 6664(a) is not illuminated by section 6201(a)(3). Section 6201(a)(3) does not state or imply that excess withholding credits that were wrongly allowed against the tax liability are later assessed as part of tax "shown". They are reversed (despite the statute's loose reference to their being "assessed"), and the suggestion that they are assessed as tax "shown" requires subtle and creative cross-referencing not warranted in the statute.

### E. *Even if section 6664(a)(1)(A) were ambiguous, the regulation is inconsistent with congressional intent.*

For the reasons stated above, section 6664(a)(1)(A) is not ambiguous, and under the Supreme Court's *Chevron* analysis, the inquiry stops there. However, if we were to assume arguendo that the statute is ambiguous and were to proceed to *Chevron*'s "step 2", we would then need to determine "whether the agency's answer is based on a permissible construction of the statute". *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843. Undertaking that step 2 analysis, I find that the definition of "amount shown as the tax" in section 1.6664–2(c)(1) of the regulations (i.e., tax shown reduced by excess credits) is not a permissible construction of the statute.

Because the penalty provision in former section 6653(a) incorporated the deficiency definition into the definition of "underpayment", the pre-1989 penalties did not reach excess withholding credits (which, as we have noted, are expressly excluded from the "deficiency" calculation by section 6211(b)(1)). As the majority acknowledges, majority op. p. 509, the 1989 legislative history includes a statement in a House report "that the definition of 'underpayment' in section 6664(a) was not 'intended to be substantively different from * * * [previous] law.' H. Rept. 101–247, *supra* at 1394." A

regulation that would impose the penalty on a new circumstance (excess withholding credits) that had not formerly been reached by the penalty *is* "substantively different" from the prior law. The IRS's interpretation is therefore at odds with express congressional intent.

If in 1989 Congress had intended to impose a penalty that reached not only under-reporting of "the amount shown as the tax" but also over-reporting of withholding credits, then it would not have used the language that appears in section 6664(a)(1)(A). A different penalty provision in section 66*94*, enacted in 1976, sheds a helpful light in this regard. Section 6694 imposes an assessable penalty on a tax return preparer for an "Understatement of Taxpayer's Liability". The definition of that "understatement" is telling:

SEC. 6694(e). UNDERSTATEMENT OF LIABILITY DEFINED.—For purposes of this section, the term "understatement of liability" means any understatement of the net amount payable with respect to any tax imposed by this title or any overstatement of the net amount creditable or refundable with respect to any such tax. * * *

This language from section 66*94*(e) reflects the concept—i.e., net tax liability after credits—that the regulation would attempt to read into section 66*64*(a). However, that language has been in section 6694(e) since 1976—i.e., 13 years before section 6664 was added in 1989—and was therefore at the ready when Congress enacted the new penalty regime; but Congress did not employ such language in section 6664. Section 6694 shows that when Congress wants to penalize an understatement of a net amount due (or an overstatement of creditable amounts), it knows how to do so. It did so in section 6694 but not by its provision in section 6664(a)(1)(A) as to tax "shown".

V. *Conclusion*

Only the legislature can legislate; only Congress can impose a penalty. I would hold that the penalty that the IRS has determined here—a fraud penalty on overstated withholding credits—has simply not been enacted to the extent that the regulation provides. The regulation's imaginative definition of "amount shown as the tax by the taxpayer on his return" is not a reasonable interpretation of the statute

but is the agency's impermissible attempt to supplement the statute.

HALPERN and WHERRY, *JJ.,* agree with this dissent.